**Mary R. BLANTON; Thomas F. Sachse; and Michelle Sachse, Plaintiffs,**

v.

**IMN FINANCIAL CORP., of Melville; Island Mortgage Network, Inc.; AppOnline.com, Inc.; National Settlement Services Corporation; State Bancorp, Inc.; State Bank of Long Island; Matrix Bancorp, Inc.; and Matrix Capital Bank, Defendants.**

No. CIV.A. 1:00CV00873.

United States District Court, M.D. North Carolina.

Jan. 29, 2001.

Christine L. Myatt, Margaret Shea Burnham, Thomas Grant Hooper, Adams, Kleemeier, Hagan, Hannah & Fouts, Greensboro, NC, for plaintiffs.

Mary R. Blanton, Salisbury, NC, pro se.

Thomas Jonathan Adams, Travis W. Moon, Smith, Helms, Mulliss & Moore, Charlotte, NC, for State Bancorp, Inc.

Robert Clay Bowers, Andrew S. O'Hara, Moore & Van Allen, Charlotte, NC, for Matrix Bancorp, Inc. and Matrix Capital Bank.

## MEMORANDUM OPINION

BULLOCK, District Judge.

This matter is before the court on a Motion to Remand or Abstain submitted by Plaintiffs Mary R. Blanton, Thomas F. Sachse, and Michelle Sachse (collectively "Plaintiffs"). For the following reasons, the motion will be denied. In addition, the court will transfer venue of the present case to the Eastern District of New York, for referral to the bankruptcy court in that district.

## FACTS

In early 2000, Plaintiffs Thomas F. Sachse and Michelle Sachse (the "Sachses") sought to buy residential real property in Salisbury, North Carolina, and applied for a loan from Island Mortgage Network, Inc. ("Island Mortgage"). Island Mortgage approved a loan to the Sachses for a principal amount of $111,078.00. The Sachses retained Plaintiff Mary R. Blanton, an attorney, to close the loan and the purchase of the property. On June 16, 2000, Blanton received a closing package from Island Mortgage containing a check issued by National Settlement Services Corporation ("NSSC"). That same day, the Sachses signed a promissory note in favor of Island Mortgage and a deed of trust securing the loan. Blanton recorded the deed of trust, forwarded the promissory note to Island Mortgage, and disbursed funds to the sellers of the property from her trust account.

When Blanton subsequently attempted to deposit the check issued by NSSC, she discovered a stop-payment order in effect. Blanton later received replacement checks from NSSC on two occasions, only to find stop-payment orders on these checks as well. Unable to obtain the promised loan funds from Island Mortgage, Blanton opened a new line of credit to cover the amount she had paid from her trust account at closing.

Prior to these events, in January 2000, Defendant Matrix Capital Bank ("Matrix") entered into a mortgage purchase agreement (the "Agreement") with Island Mortgage and its corporate parent AppOnline.com (collectively "the Debtors"), to purchase certain residential mortgage loans originated by the Debtors. In the

Agreement, the Debtors warranted that all loans sold to Matrix would be valid, funded, and not subject to any claim, defect, lien, or cause of action. (Mem. of Law in Opp'n to Pls.' Mot. to Remand, Ex. A at 4–8). The Agreement also contained a provision indemnifying Matrix from any breach of these warranties. (*Id.* at 9). Pursuant to the Agreement, Matrix later purchased from the Debtors the note and accompanying security documents for the Sachses' mortgage loan.

The Sachses received a letter on July 5, 2000, notifying them that Matrix had purchased their mortgage and directing the Sachses to send subsequent mortgage payments to Matrix. On July 6, 2000, Blanton contacted Matrix and informed a supervisor at Matrix that Island Mortgage had failed to fund the Sachses' loan.[1] Blanton demanded that Matrix fund the loan. Matrix informed Blanton that it had delivered an amount to cover the loan to an entity called Action Abstract, Inc., Island's designated escrow agent. Blanton never received these funds. On July 13, 2000, Plaintiffs filed a lawsuit in the Superior Court of Rowan County, North Carolina, against several named defendants[2] alleging breach of contract, fraud, negligent misrepresentation, and unfair and deceptive trade practices.[3]

The Sachses' mortgage was not the only one that Matrix purchased from the Debtors that is subject to competing claims. Matrix currently knows of thirty-seven loans acquired from the Debtors that are subject to claims by parties that participated in the underlying mortgage transaction. At least seven of the loans Matrix purchased from the Debtors have already resulted in litigation in six states, and Matrix expects more litigation to ensue. A number of suits have also been brought against other banks, similar to Matrix, that purchased mortgage loans from the Debtors.

On July 19, 2000, the Debtors filed separate petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York. The bankruptcy court has entered an Order for Relief and has appointed a Trustee for the cases. Due to a bankruptcy stay, Matrix has been prevented from asserting cross-claims against the Debtors in the various actions that have been brought. The bankruptcy stay has also prevented Matrix from compelling discovery from the Debtors. Matrix has filed adversary proceedings in the bankruptcy cases, but has been unable to conduct discovery because of the Trustee's

---

**1.** According to Plaintiffs, the supervisor acknowledged that Matrix knew as early as June 9, 2000, that there were problems with the funding of Island mortgage loans. The supervisor told Blanton that Matrix had suspended its funding line with Island Mortgage and had requested that the State of New York suspend Island Mortgage's mortgage banking license. On June 30, 2000, the New York State Banking Commission suspended Island Mortgage's license.

Plaintiffs also allege that on July 7, 2000, one day after Blanton spoke with the Matrix supervisor, Matrix itself executed a purported mortgage assignment attempting to assign Island's interest in the mortgage to Matrix.

While these allegations might bear on the ultimate disposition of the case, they do not affect the question currently before the court: whether this court should exercise jurisdiction.

**2.** The Debtors are named as defendants in the lawsuit, but Plaintiffs do not seek any damages from them.

**3.** Plaintiffs seek damages from National Settlement Services Corporation, the entity that issued the checks Blanton received. The complaint also requests equitable relief against Matrix in the form of an equitable subrogation, equitable lien, constructive trust, resulting trust, or cancellation of the promissory note and deed of trust.

on-going investigation, a federal grand jury investigation of the Debtors pending in the Eastern District of New York, and an investigation conducted by the New York State Banking Commission.

In light of these circumstances, Matrix removed the various lawsuits pending against it, including the present action, pursuant to 28 U.S.C. §§ 1334 and 1452. Since removal of the present action to federal court, the Bankruptcy Court for the Eastern District of New York has issued an order authorizing the Trustee to sell at auction certain mortgages deemed part of Island Mortgage's bankruptcy estate.[4] The mortgages to be sold include the Sachses' mortgage. In an effort to expedite the disposition of this case and the other cases around the country involving disputed mortgages purchased from Island Mortgage, Matrix seeks to transfer all of the lawsuits in which it is a named defendant to the Bankruptcy Court for the Eastern District of New York. Plaintiffs have filed the present motion seeking to prevent such a transfer and arguing that this court should remand the case to state court.

### DISCUSSION

*28 U.S.C. §§ 1334(b) and 1452(a)*

Title 28, United States Code § 1452(a) states, "A party may remove any claim or cause of action in a civil action ... to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a). Title 28, United States Code § 1334(b) provides, "Notwithstanding any Act of Congress that confers ex-

clusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in *or related to cases under title 11*." 28 U.S.C. § 1334(b) (emphasis added). Matrix claims that removal was proper because the suit brought by Plaintiffs "relates to" the Debtors' bankruptcy proceedings in the Eastern District of New York. Plaintiffs contend, however, that their suit against Matrix is collateral to the bankruptcy proceedings and should be remanded to state court.

■ The Fourth Circuit has adopted the test set forth in *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir.1984), for determining whether a civil proceeding "relates to" a bankruptcy case. *See Owens–Illinois, Inc. v. Rapid American Corp. (In re Celotex Corp.)*, 124 F.3d 619, 625 (4th Cir.1997). According to that test:

> [W]hether a civil proceeding is related to bankruptcy is [determined by] whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.* Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate.

*Pacor*, 743 F.2d at 994 (emphasis in original) (citations omitted). The Fourth Circuit has construed the *Pacor* test broadly, stating that the test "does not require certain or likely alteration of the debtor's rights, liabilities, options or freedom of

---

**4.** The Trustee takes the position that the mortgages authorized for sale by the bankruptcy court, including the Sachses' mortgage, were actually financed, rather than purchased, by

warehouse lenders like Matrix. As a result, the Trustee considers these mortgages part of the bankruptcy estate.

action, nor does is require certain or likely impact upon the handling and administration of the bankruptcy estate. The possibility of such alteration or impact is sufficient to confer jurisdiction." *In re Celotex Corp.*, 124 F.3d at 626; *see also Nat'l Union Fire Ins. Co. v. Titan Energy, Inc. (In re Titan Energy, Inc.)*, 837 F.2d 325, 330 (8th Cir.1988) ("[E]ven a proceeding which portends a mere contingent or tangential effect on a debtor's estate meets the broad jurisdictional test articulated in *Pacor*.").

In *In re Celotex*, the Fourth Circuit found that the civil proceeding in question "related to" the bankruptcy case, and therefore federal jurisdiction was proper. The appellant in *In re Celotex*, Owens–Illinois, Inc. ("Owens"), originally sought contribution from Celotex Corporation for joint and several judgments satisfied by Owens. Before Owens could recover any contribution, Celotex Corporation filed for bankruptcy. Owens then brought suit for contribution against another corporation, Rapid American Corporation ("Rapid"). Rapid removed the action to federal court, claiming that the civil proceeding "related to" Celotex Corporation's bankruptcy case. The Fourth Circuit agreed. The court cited several reasons for finding that the contribution action related to the bankruptcy case. First, the court stated that any recovery by Owens in the contribution action would reduce Owens' claim against the Celotex Corporation bankruptcy estate by the same amount. This would alter the liabilities of the Celotex Corporation bankruptcy estate. Second, because of an indemnity agreement between Rapid and Celotex Corporation, the court found that any recovery by Owens in its contribution action against Rapid would affect the handling and administration of the bankruptcy estate by transforming an indemnity claim by Rapid against Celotex Corporation from "contingent and unliquidated to

certain and liquidated." *In re Celotex*, 124 F.3d at 626. The court found this significant because it "would obviate the need to estimate the amount of Rapid's claim under Bankruptcy Code § 502(c), which requires that a contingent or unliquidated claim be estimated if the bankruptcy court determines that the fixing or liquidation of a claim would unduly delay the administration of the bankruptcy case." *Id.* The indemnity agreement also led the court to reject the argument offered by Owens that regardless of which company, Rapid or Owens, brought an action for contribution against Celotex Corporation, the bankruptcy estate would face the same amount of potential liability. According to Owens, since Celotex Corporation faced the same amount of potential liability to either prospective plaintiff, the civil action between Owens and Rapid would not have a substantive effect on the administration of the bankruptcy estate; it would only determine which party would sue the bankruptcy estate for contribution. The court rejected this argument because the indemnity agreement between Rapid and Celotex Corporation covered attorney's fees. Because of this attorney's fees provision, the court found that Celotex would actually face greater potential liability if sued by Rapid than if sued by Owens. *Id.* at 626–27. This difference in potential liability could have conceivably affected the administration of the bankruptcy estate, and therefore the court deemed the contribution action between Owens and Rapid related to Celotex Corporation's bankruptcy case.

The *Pacor* case, from which the Fourth Circuit derived its "related to" test, also found the presence (or absence) of an indemnity agreement dispositive of the "related to" question. In *Pacor*, the Third Circuit held that the civil proceeding in question did not relate to a bankruptcy

case, but the court took particular care to distinguish the case from *In re Brentano's, Inc.*, 27 B.R. 90 (Bankr.S.D.N.Y.1983), a case finding "related to" jurisdiction. The distinguishing factor that the *Pacor* court emphasized was the presence of an indemnification agreement in *In re Brentano's* and its absence in *Pacor*. The court stated that the indemnification agreement in *In re Brentano's* "would automatically result in indemnification liability against [the debtor]," and therefore would clearly affect the estate in bankruptcy. *Pacor*, 743 F.2d at 995. In contrast, in *Pacor* there was no indemnification agreement and therefore the court found that "there would be no automatic liability against [the debtor] on account of a judgment against [the non-debtor defendant]." *Id.*

■ These cases indicate that the civil proceeding between Plaintiffs and Matrix "relates to" the Debtors bankruptcy case under 28 U.S.C. § 1334(b). First, as in *In re Celotex*, a judgment for the Plaintiffs against Matrix will reduce any claims Plaintiffs might have against the Debtors. In addition, as in *In re Celotex* and *In re Brentano's*, the mortgage purchase agreement between Matrix and the Debtors contains an indemnification clause. This clause states that the Debtors agree to indemnify Matrix from "any and all suits, losses, liabilities, liens, expenses, costs, damages, fees or claims made by borrowers or third parties" against Matrix caused by any breach by the Debtors of any warranty made in the Agreement or in the mortgages delivered under the Agreement. (Mem. in Opp'n to Pls.' Mot. to Remand, Ex. A at 9). Since this clause covers attorney's fees that Matrix incurs in the present case, the bankruptcy estates face greater potential liability to Matrix than to Plaintiffs. As in *In re Celotex*, this difference in potential liability could affect the administration of the bankruptcy estates.

Therefore, the court finds that the present case relates to the Debtors' bankruptcy cases and removal was proper under 28 U.S.C. §§ 1334(b) and 1452(a).

## 28 U.S.C. § 1334(c)(2)

■ Plaintiffs next contend that even if the present case is related to the Debtors' bankruptcy cases, 28 U.S.C. § 1334(c)(2) requires that this court abstain from asserting jurisdiction. Title 28, United States Code § 1334(c)(2) provides that:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). Thus, mandatory abstention is appropriate under § 1334(c)(2) when the following requirements are met: (1) a timely motion is made; (2) the proceeding is based on a state law claim or a state law cause of action; (3) the proceeding is related to a case under Title 11; (4) the proceeding does not arise under Title 11; (5) the action could not have been commenced in a federal court absent jurisdiction under 28 U.S.C. § 1334; and (6) an action is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction.

Contrary to Plaintiffs' position that 28 U.S.C. § 1334(c)(2) mandates abstention, Matrix argues that the statute's fifth requirement (that the action could not have been commenced in a federal court absent jurisdiction under 28 U.S.C. § 1334) has not been met. The court agrees. The

present action could have been commenced in federal court based on diversity jurisdiction. According to 28 U.S.C. § 1332(a), "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States." 28 U.S.C. § 1332(a)(1). According to the amended complaint, the mortgage at issue has a value in excess of $110,000. In addition, all three plaintiffs are citizens of North Carolina and none of the named defendants are North Carolina citizens. Therefore, the amount in controversy requirement is met and complete diversity exists. This court has original jurisdiction under 28 U.S.C. § 1332(a).

Plaintiffs acknowledge that Matrix could have invoked diversity jurisdiction at the commencement of the case, but argue that the requirements of 28 U.S.C. § 1334(c)(2) are still satisfied because "[i]f 'related to' jurisdiction exists, this action only could have been removed under the bankruptcy removal statutes, and therefore mandatory abstention applies." (Reply to Defs.' Mem. in Opp'n to Pls.' Mot. to Remand at 6). Plaintiffs cite *Balcor/Morristown Ltd. P'ship v. Vector Whippany Assocs.*, 181 B.R. 781 (D.N.J.1995) in support of this proposition. In *Balcor*, the plaintiff, an Illinois partnership, brought suit against the defendant, a New Jersey partnership, in New Jersey state court. The defendant removed to federal court based on "related to" jurisdiction. In analyzing whether to abstain under the mandatory abstention provision of 28 U.S.C. § 1334(c)(2), the court stated that because the plaintiff brought suit in state court and the defendant was a citizen of that state, diversity jurisdiction was unavailable and the case could not have commenced in federal court absent "related to" jurisdiction. *See* 28 U.S.C. § 1441(b). Thus, in *Balcor*, "related to" jurisdiction existed and the defen-

dants could have removed the case only under the bankruptcy removal statutes (i.e. removal based on diversity jurisdiction was unavailable). Based on these facts, the *Balcor* court found abstention mandatory under 28 U.S.C. § 1334(c)(2). The present case differs. As discussed above, Matrix initially could have removed this action based on diversity jurisdiction. This significant difference renders the *Balcor* decision inapposite. Plaintiffs read *Balcor* as holding that if "related to" jurisdiction exists, then the action may only be removed under the bankruptcy statutes and mandatory abstention applies. *Balcor* actually holds that if "related to" jurisdiction exists *and* the action may only be removed under the bankruptcy statutes, then mandatory abstention applies. Therefore, the availability of diversity jurisdiction in the present case precludes the application of the mandatory abstention statute.

Plaintiffs' position also contradicts the clear language of 28 U.S.C. § 1334(c)(2). The statute states that the district court must abstain from hearing an action if the action "*could not have been commenced* in a court of the United States absent jurisdiction under [§ 1334]." 28 U.S.C. § 1334(c)(2) (emphasis added). Under this clear language, if a party could have commenced the action in federal court on some basis other than the bankruptcy statutes, the mandatory abstention statute does not apply. *See Medical Lab. Consultants v. American Broad. Co., Inc. (In re Med. Lab. Mgmt. Consultants)*, 931 F.Supp. 1487, 1492 (D.Ariz.1996) (finding that even though defendants removed the case to federal court based on its relation to a bankruptcy case, § 1332(c)(2) did not require abstention because diversity jurisdiction could have been asserted); *see also Steinman v. Spencer (In re Argus Group 1700, Inc.)*, 206 B.R. 737, 750 (Bankr.

E.D.Pa.1996) (stating that "the fifth requirement [under § 1334(c)(2) ] focuses upon whether the action could have originally been commenced in federal court absent jurisdiction under § 1334 and not whether the action could have been removed"). Abstention is mandatory only when the action could not have been commenced in federal court on any jurisdictional basis other than the bankruptcy removal statutes. The present case was not commenced in federal court based on diversity jurisdiction, but it could have been. The availability of diversity jurisdiction at the commencement of the case is enough to prevent application of the mandatory abstention provision found in § 1334(c)(2). Therefore, the court finds the requirements of 28 U.S.C. § 1334(c)(2) unmet and mandatory abstention inapplicable.

*28 U.S.C. §§ 1452(b) and 1334(c)(1)*

Plaintiffs also argue that even if the present action is related to the Debtors' bankruptcy case and the mandatory abstention statute does not apply, equity warrants that this court exercise its discretion to remand the case pursuant to 28 U.S.C. § 1452(b) or to abstain under 28 U.S.C. § 1334(c)(1). Title 28, U.S.C. § 1452(b) states in pertinent part, "The court to which [a] claim or cause of action is removed [pursuant to 28 U.S.C. § 1334] may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b). Title 28, U.S.C. § 1334(c)(1) states that "[n]othing in [§ 1334] prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related

to a case under title 11." 28 U.S.C. § 1334(c)(1).

■ Courts have considered several factors when determining whether to exercise equitable remand or permissive abstention.[5] These factors include: (1) the court's duty to resolve matters properly before it; (2) the predominance of state law issues and non-debtor parties; (3) the economical use of judicial resources; (4) the effect of remand on the administration of the bankruptcy estate; (5) the relatedness or remoteness of the action to the bankruptcy case; (6) whether the case involves questions of state law better addressed by the state court; (7) comity considerations; (8) any prejudice to the involuntarily removed parties; (9) forum non conveniens; (10) the possibility of inconsistent results; (11) any expertise of the court where the action originated; and (12) the existence of a right to a jury trial. *See Browning v. Navarro,* 743 F.2d 1069, 1076 n. 21 (5th Cir.1984); *In re Med. Lab. Mgmt. Consultants,* 931 F.Supp. at 1493; *River Cement Co. v. Bangert Bros. Constr. Co.,* 852 F.Supp. 25, 27 (D.Colo.1994); *Western Helicopters, Inc. v. Hiller Aviation, Inc.,* 97 B.R. 1, 2 (E.D.Cal.1988); *Hillsborough Holdings Corp. v. Celotex Corp. (In re Hillsborough Holdings Corp.),* 123 B.R. 1004, 1013 (Bankr.M.D.Fla.1990).

■ Based on these factors, the court finds that federal jurisdiction is appropriate. First, the court acknowledges that some factors weigh in favor of remanding the action to state court. Compelling reasons exist, however, to maintain federal jurisdiction. Foremost, due to the discovery stay currently in place in the bankruptcy proceedings, Matrix would be severely prejudiced if it were forced to

---

**5.** "[V]irtually the same (if not identical) factors have emerged for judging the propriety of permissive abstention under § 1334(c)(1) as have been articulated for deciding the propri-

ety of remand under § 1452(b)." *Ernst & Young, LLP v. Devan (In re Merry–Go–Round Enters., Inc.),* 222 B.R. 254, 256 (D.Md.1998).

proceed in state court. The equitable remedies Plaintiffs seek against Matrix are predicated on allegations of misconduct by the Debtors. Without the ability to compel discovery from the Debtors, Matrix cannot fully defend itself against Plaintiffs' claims. The state court could not compel such discovery. Moreover, the court recognizes the duty to resolve matters properly before it. As discussed earlier, under the broad construction used by the Fourth Circuit, the present action "relates to" the bankruptcy proceeding. In addition, Matrix could have originally removed the present action based on diversity jurisdiction. Therefore, the action is properly in federal court, and the federal courts have a duty to resolve the matter. Additionally, while the causes of action asserted by Plaintiffs are based on state law, they do not involve novel legal questions which would be better resolved by the state courts. Finally, with multiple similar actions pending against Matrix and other mortgage purchasers throughout the country, judicial economy and consistency favor maintaining federal jurisdiction and transferring the proceeding to the Bankruptcy Court for the Eastern District of New York.

*Transfer of Venue*

According to 28 U.S.C. § 1412, "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. The court recognizes that change of venue to the Eastern District of New York may prove less convenient to Plaintiffs than proceeding in this court, but the interest of justice weighs in favor of such a transfer. *See Irwin v. Beloit Corp. (In re Harnischfeger Indus., Inc.)*, 246 B.R. 421, 435 (Bankr.N.D.Ala. 2000) ("Because the criteria under § 1412 is phrased in the disjunctive, the bankruptcy case or proceeding is transferable upon a sufficient showing of either the interest of justice or the convenience of the parties."). Factors cited by courts in determining whether transfer of venue will serve the interests of justice include: (a) the economic administration of the bankruptcy estate; (b) the presumption in favor of trying cases "related to" a bankruptcy case in the court in which the bankruptcy is pending; (c) judicial efficiency; (d) ability to receive a fair trial; (e) the state's interest in having local controversies decided within its borders; (f) enforceability of any judgment rendered; and (g) the plaintiff's original choice of forum. *Id.* at 435–37. Although the state's interest in deciding local controversies and the plaintiff's original choice of forum favor retaining venue, these factors are outweighed by considerations of consistency, judicial economy, and economic administration of the bankruptcy estate.

The Bankruptcy Court for the Eastern District of New York has ordered the sale by auction of several mortgages, including the Sachses', deemed by the Trustee to be part of Island Mortgage's bankruptcy estate. Matrix has filed an application for modification of this order, and Plaintiffs have filed a notice of appeal from this order. As evidenced by these filings, the bankruptcy court is already familiar with the competing claims of priority regarding the Sachses' mortgage and numerous other mortgages involving similar competing claims. Therefore, judicial economy and the economic administration of the bankruptcy estate weigh in favor of transferring the proceeding. Moreover, with multiple cases around the country involving the same factual scenario, including at least two cases arising from mortgages issued in North Carolina, transferring the cases to a single court for disposition reduces the likelihood of inconsistent results.

In addition to these concerns over judicial efficiency and consistency, many courts presume that the proper venue for a proceeding related to a bankruptcy case is in the district hearing the bankruptcy case. *See Sudbury, Inc. v. Dlott (In re Sudbury),* 149 B.R. 489, 493 (Bankr.N.D.Ohio 1993) (noting the "general presumption that all matters involving a bankruptcy should be tried in the court in which the bankruptcy is pending."); *Nixon Mach. Co. v. Roy Energy, Inc. (In re Nixon Machinery Co.),* 27 B.R. 871, 873 (Bankr. E.D.Tenn.1983) (stating that the "general rule" is that "the court where the bankruptcy case is pending is the proper venue for all related proceedings within the court's jurisdiction."). This, too, supports the decision to transfer venue to the Eastern District of New York. Finally, there is no reason to believe that the ability to receive a fair trial or the enforceability of any judgment rendered would be affected by transferring venue. Consequently, the court finds that in the interest of justice the present action should be transferred to the Eastern District of New York, from which it can be referred to the bankruptcy court.

## CONCLUSION

For the foregoing reasons, the court will deny Plaintiffs' motion to remand. The court will also transfer venue of the present action to the United States District Court for the Eastern District of New York for referral to the bankruptcy court in that district.