In re MID–ATLANTIC RESOURCES CORP., Debtor.

William E. Abner, et al., Appellants,

v.

Mate Creek Loading, Inc., et al., Appellees.

No. Civ.A. 5:01–0699.
Bankruptcy No. 99–50521.
Adversary No. 00–0068.

United States District Court,
S.D. West Virginia,
Beckley Division.

Aug. 28, 2002.

Stephen P. Hoyer, Hoyer, Hoyer, Smith & Miesner, Charleston, WV, for debtor.

Charles F. Donnelly, Donnelly, Carbone & Kettler, P.L.L.C., Charleston, WV, for appellants.

Cecil C. Varney, Williamson, WV, Julia A. Chincheck, Bowles, Rice, McDavid, Graff & Love, Charleston, WV, Arthur M. Standish, Steptoe & Johnson, Charleston, WV, William F. Dobbs, Jr., Jackson & Kelly, Charleston, WV, Bruce M. Jacobs, Spilman, Thomas & Battle, Charleston, WV, for appellees.

John A. Rollins, Lewis, Friedberg, Glasser, Casey & Rollins, Charleston, WV,

Thomas H. Fluharty, Clarksburg, WV, for trustee.

## MEMORANDUM OPINION AND ORDER

CHAMBERS, District Judge.

This case is an appeal of the bankruptcy court's Order of October 12, 2000, as amended on November 21, 2000, which denied a motion by Plaintiffs below and Appellants herein to remand their wage payment and collection action to the Circuit Court of Raleigh County, West Virginia. In their brief, Appellants assert the bankruptcy court erred because it did not have jurisdiction over their state action and the removal petition was procedurally and substantively infirm. American Metals & Coal International, Inc. (American), AMCI Resources, Inc. (AMCI), and Westmoreland Coal Company (Westmoreland), Pocahontas Land Corporation (Pocahontas), and Thomas H. Fluharty, Appellees herein, have responded to Appellants' appeal and assert the bankruptcy court's decision should be affirmed because the judge properly found Appellants' case was a "core" proceeding within the meaning of 28 U.S.C. § 157, there were no defects in the removal procedure, and the principles of abstention and equitable remand are unwarranted under the circumstances.[1] The Court disposes with oral argument because the facts and legal arguments are adequately presented in the briefs and in the record, and the decisional process would not be significantly aided by oral argument. *See* Fed.R.Bankr.P. 8012.[2] For the reasons set forth below, the Court

---

1. Piney Land Company and Richard K. Bailey joined in the Appellees' brief.

2. Rule 8012 provides, in part: "Oral argument shall be allowed in all cases unless the district judge ... determine[s] after examination of the briefs and record, or appendix to the brief, that oral argument is not needed." Fed.R.Bankr.P. 8012.

**AFFIRMS** the decision of the bankruptcy court.

## I.

### STANDARD OF REVIEW

In an appeal from a bankruptcy court, a district court may not set aside the bankruptcy judge's findings of fact unless those findings are clearly erroneous. Fed. R.Bankr.P. 8013;[3] *In re Bryson Prop., XVIII,* 961 F.2d 496, 499 (4th Cir.1992); *In re Johnson,* 960 F.2d 396, 399 (4th Cir.1992). " 'A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). A bankruptcy court's conclusions of law are reviewed *de novo. In re Johnson,* 960 F.2d at 399. Mixed question of fact and law are typically reviewed *de novo. Rinn v. First Union Nat. Bank of Md.,* 176 B.R. 401, 407 (D.Md. 1995) ("Mixed questions of fact and law which contain 'primarily a consideration of legal principles' are considered *de novo.*" (quoting *In re Ruti–Sweetwater, Inc.,* 836 F.2d 1263, 1266 (10th Cir.1988))); *In re Grimm,* 156 B.R. 958, 961 (E.D.Va.1993) (citing *In re McWhorter,* 887 F.2d 1564 (11th Cir.1989) (stating *de novo* review applies when there are mixed questions of law and fact in which legal issues prevail)).

**3.** Rule 8013 provides:

On an appeal the district court ... may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

Fed.R.Bankr.P. 8013.

## II.

### FACTUAL AND PROCEDURAL HISTORY

According to Appellees, Mid–Atlantic Resources Corp. (Debtor) purchased certain real and personal property in 1997 from the bankruptcy trustee of Adventure Resources, Inc. Debtor's purchases included a coal preparation plant, mining equipment, conveyor systems, and leases of certain reserves collectively referred to as the "East Gulf Operations." Upon acquiring these assets, Debtor subcontracted with Rhino Mining, Inc. (Rhino), which, in turn, subcontracted with Island Fork Construction, Ltd. (Island Fork), to operate the "Josephine" and "Tommy Creek" mines at the East Golf Operations. Debtor also subcontracted with Mate Creek Loading, Inc. (Mate Creek) to operate a preparation plant and AMCI Coal Sales, Inc. (ACS) to broker Debtor's coal.

On August 12, 1999, Debtor filed for Chapter 11 bankruptcy. According to the bankruptcy court, when Debtor filed its bankruptcy petition, it had no working capital and no means "to obtain unsecured lines of credit from any source." *Amended Order Denying Motion to Remand,* at 3 (November 21, 2000) (citation in footnote omitted). Therefore, one of the first things done in that case was to submit a proposal for post-petition financing. *Id.* As part of financing scheme, ACS agreed to give Debtor a line of credit and advance it money for payment of sums due to Rhino and Mate Creek, which money primarily was used to pay wages. In exchange, ACS was given, *inter alia,* a first lien on receivables, equipment, and inventory. *Id.*

at 3–4. In authorizing the post-petition financing arrangement, the bankruptcy court found the monetary advances were needed to prevent a strike by the Rhino and Mate Creek employees. *Id.* at 4 (citing *In re: Mid–Atlantic Resources, Corp., Order Authorizing Debtor to Obtain Post–Petition Financing,* at 3 September 9, 1999).

Mining and the related activities continued until on or about January 31, 2000, when Debtor, Rhino, Mate Creek, and Island Fork ceased all operations. Debtor's bankruptcy case was then converted into a proceeding under Chapter 7 of the Bankruptcy Code and Thomas Fluharty was appointed as the Interim Trustee.

On February 24, 2000, Appellants, who were employees of Rhino, Mate Creek, and Island Fork filed a mechanic's lien in the amount of $737,520.16 for unpaid wages, benefits, and payroll withholdings for union dues. According to Appellants, these three Defendants operated an integrated coal mining and processing operation in Raleigh County, West Virginia, as a joint venture with and/or contractors for American and AMCI. This operation ceased on or about January 31, 2000, when Rhino, Mate Creek, and Island Fork stopped doing business and laid-off its employees.

The bankruptcy court found that the lien Appellants filed attached the real and personal property of Rhino, Mate Creek, Island Fork, American, AMCI, Pocahontas, Piney Land Company (Piney), Westmoreland, Timothy McCoy, Richard K. Bailey, Larry McKinney, Robert Massey, and Amon Mahon (Defendants). *Id.* at 5.[4] In addition to this general lien on the real and personal property of Defendants, the bankruptcy court found that Appellants also claimed a lien on all Defendants' interests in and to the two mines operated by Rhino and Island Fork for the Debtor and the East Golf preparation plant operated by Mate Creek for the Debtor. The lien extended to all Defendants' interests in fee, mineral, leasehold, or contract. *Id.* (citing *Notice of Mechanic's Lien,* at 7). The mechanic's lien does not, however, mention Debtor.

On March 3, 2000, Appellants filed suit against Defendants in the Circuit Court of Raleigh County, West Virginia, seeking to obtain $971,170.91 in alleged unpaid wages, fringe benefits, medical benefits, payroll deductions for union dues, and liquidated damages pursuant to common law and the West Virginia Wage Payment and Collection Act, West Virginia Code § 21–5–1 *et seq.* In the action, Appellants also sought to enforce their mechanic's lien and sought an injunction to prohibit the removal, sale, or disposition of any property or other assets from the preparation plant and mine sites. Appellants further requested a jury trial.

On April 13, 2000, American, AMCI, and Westmoreland (the Removing Defendants) filed a Notice of Removal of Appellants' action from state court to the bankruptcy court. In their Notice, the Removing Defendants allege original jurisdiction over Appellants' action exists by virtue of one or more claims arising under the Bankruptcy Code, 11 U.S.C. § 101 *et seq.,* and the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1101 *et*

---

4. In footnote 13 of the Amended Order, the bankruptcy court noted that Appellants allege Pocahontas, Piney, and Westmoreland are the landowners of the property upon which they worked and American, or its subsidiary AMCI, was the prime contractor of the East

Golf Operations or was in a joint venture with one or more of their employers. The individually named Defendants are the corporate officers of Appellants' direct employers. *Id.* at 5 n. 12 (citations omitted).

*seq.*[5] *Notice of Removal,* at 4. Specifically, the Removing Defendants claim Appellants' action seeks to enforce a mechanic's lien against property included in Debtor's bankruptcy estate and the action falls within the definition of a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2). *Id.* at 4–5. Therefore, the Removing Defendants alleged removal was appropriate under 28 U.S.C. §§ 1441, 1446, and 1452 and Rule 9027 of the Federal Rules of Bankruptcy Procedure. *Id.* at 4.

On May 15, 2000, Appellants filed a motion to remand the case to the Circuit Court of Raleigh County. After the Removing Defendants filed a response and Appellants filed their reply, the bankruptcy court held an expedited hearing on June 23, 2000.[6] Three days prior to the hearing, on June 20, 2000, Thomas H. Fluharty, the Chapter 7 Trustee for Debtor, filed a motion to intervene.[7] Appellants objected to the Trustee's motion, but on August 18, 2000, the bankruptcy court entered an Order conditionally granting the Trustee's motion, giving the Trustee thirty days to file an Answer or other pleading as necessary to protect the estate's claim.

On October 12, 2000, the bankruptcy court entered an Order denying Appellants' motion to remand. Specifically, the bankruptcy court found the procedure used for removal was sufficient, the requirements for commencing an adversary proceeding under Rule 7003 of the Federal Rules of Bankruptcy Procedure were satisfied, and the adversary proceeding fell within the meaning of a "core proceeding." This Order was amended on November 21, 2000, to correct some of the factual findings and it also gave Pocahontas and the other Removing Defendants ten days from entry of the Amended Order to file a statement in accordance with Rule 9027(e)(3) of the Federal Rules of Bankruptcy Procedure.[8] Appellants now appeal.

### III.

### DISCUSSION

#### A.

#### Removal

Appellants' first argument is that the bankruptcy court erred in finding the removal of their claim from the circuit court was proper. Specifically, Appellants assert that the removal is procedurally infirm because all Defendants did not join in the removal and because neither Defendants nor the Trustee filed a statement of jurisdiction as required by the Federal Rules of Bankruptcy Procedure. The Court will consider these arguments one at a time.

---

5. In ruling on Appellants' motion to remand, the bankruptcy court did not reach the ERISA issue.

6. On July 19, 2000, Pocahontas filed a brief in which it asserted it filed a "Response to Notice of Removal" on June 30, 2000.

7. The Trustee attended the hearing held on June 23, 2000.

8. Rule 9027(e)(3) provides:

Any party who has filed a pleading in connection with the removed claim or cause of action, other than the party filing

the notice of removal, shall file a statement admitting or denying any allegation in the notice of removal that upon removal of the claim or cause of action the proceeding is core or non-core. If the statement alleges that the proceeding is non-core, it shall state that the party does or does not consent to entry of final orders or judgment by the bankruptcy judge. A statement required by this paragraph shall be signed pursuant to Rule 9011 and shall be filed not later than 10 days after the filing of the notice of removal. Any party who files a statement pursuant to this paragraph shall mail a copy to every other party to the removed claim or cause of action.

■ First, Appellants argue that all Defendants were required to join in the removal under 28 U.S.C. § 1446(b), which is often referred to as the "rule of unanimity." [9] This rule provides that "[b]ecause the right of removal is jointly held by all the defendants, the failure of one defendant to join in the notice precludes removal." *Lloyd v. Cabell Huntington Hosp., Inc.*, 58 F.Supp.2d 694, 697 (S.D.W.Va. 1999) (citing *Moore's Federal Practice*, § 107.11[1][c] ). This rule "does not require all defendants to sign a single joint notice of removal, but it does require each to register to the Court its official and unambiguous consent to a removal petition filed by a co-defendant within the thirty day window afforded by 28 U.S.C. § 1446(b)." *Id.* (internal quotation, citations, and footnote omitted).[10] In this case, Appellants allege that it is clear that not all Defendants joined in the removal and, therefore, the case should be remanded to state court.

■ Although Appellants are correct that ordinarily all defendants must join in or register their consent to removal, this case involves bankruptcy and, as such, the bankruptcy removal statute found in 28 U.S.C. § 1452 controls.[11] As noted by the Removing Defendants and as found by the bankruptcy court, the Fourth Circuit has held that under the bankruptcy removal statute "any one party has the right to remove the state court action without the consent of the other parties." *Creasy v. Coleman Furniture Corp.*, 763 F.2d 656, 660 (4th Cir.1985). Appellants assert, however, that *Creasy* is distinguishable from the present case and, therefore, should not be applied.

In *Creasy*, the trustee of a Chapter 7 liquidation action filed an adversary proceeding in bankruptcy court to determine what rights existed to monies held in the debtor's employee pension fund. *Id.* at 657. The bankruptcy trustee also sought to recover any excess monies as part of the debtor's estate. *Id.* However, an employee covered by the fund filed a declaratory judgment action in state court to determine her rights in the pension fund. *Id.*

---

Fed.R.Bankr.P. 9027(e)(3).

9. Section 1446(b) provides:

The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section

1332 of this title more than 1 year after commencement of the action.
28 U.S.C. 1446(b).

10. *See also Wilkins v. Correctional Med. Sys.*, 931 F.2d 888, 1991 WL 68791 at *2 n. 2 (4th Cir. May 3, 1991) (unpublished) (stating in dicta that "[a]ll defendants must unanimously join in or consent to a removal action within 30 days of receiving service of the complaint." As this requirement under § 1446 is mandatory, the court further stated "there is no federal jurisdiction when one of the defendants fails to join in, file his own, or officially and unambiguously consent to, a removal petition within 30 days of service") (citations omitted).

11. Section 1452(a) provides, in part: A party may remove any claim or cause of action in a civil action ... to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title. 28 U.S.C. § 1452(a).

Thereafter, one of the trustees of the pension fund, who was named as a defendant in the state court action, removed the employee's action to the bankruptcy court under 28 U.S.C. § 1478(a), which is now contained as 28 U.S.C. § 1452(a). *Id.* at 657–58. The employee filed a motion to remand, but the district court denied the motion. *Id.* at 659. On appeal, the Fourth Circuit rejected the employee's argument that the bankruptcy removal statute should be interpreted in the same way as the general removal statute which requires all defendants to consent to the removal of a state court action. *Id.* at 660. Instead, the Court determined that any party, without the consent of the others, may remove an action from state court to bankruptcy court. *Id.*

Appellants argue this case is distinguishable from *Creasy* because in that case the state court action was identical to the issue being litigated in the bankruptcy court and it would have had a direct impact on the assets of the bankruptcy estate. To the contrary, Appellants assert the case they filed in state court will not likely be litigated in the bankruptcy court. Assuming for the moment that Appellants' assertion about its state court action is correct, the Court finds this distinction irrelevant as to whether § 1452(a) requires all defendants to join in the removal of the action. Although Appellants' argument may touch on other aspects about the appropriateness of removal, as will be discussed *infra*, it does not negate the fact that consent of all the parties is not needed under § 1452(a) for removal of a case to bankruptcy court. Therefore, the Court rejects Appellants' argument that the removal of this case was procedurally infirm because not all Defendants joined in or consented to the removal.[12] *See also Plowman v. Bedford Fin. Corp.*, 218 B.R. 607, 616 (N.D.Ala.1998) (stating "[w]hen a case is removed under 28 U.S.C. § 1452, one defendant may remove a case without the consent of the other defendants"); *Joe Conte Toyota, Inc. v. Howell*, No. Civ.A. 97–0686, 1997 WL 222410, at *1 (E.D.La. Apr. 30, 1997) (stating "[r]egarding consent, removals of claims related to bankruptcy cases are governed by 28 U.S.C. § 1452, under which any one defendant has the right to remove without the consent of other defendants"); *Sommers v. Abshire*, 186 B.R. 407, 409 (E.D.Tex.1995) (holding "[u]nder section 1452, any defendant has the right to remove a state court action without the consent of the other parties").[13]

12. The Court also notes that Appellants incorrectly allege that the bankruptcy trustee removed the action in *Creasy*. Instead, it was one of the pension fund trustees who removed the action, not the bankruptcy trustee. *See Creasy*, 763 F.2d at 657–58 (stating "[a] trustee of the pension fund, who was a defendant in the state court action, filed a removal petition ... and the state court action was removed to federal bankruptcy court").

13. The Court further rejects Appellants' argument that *Creasy* may no longer be good law in light of the 1987 amendments to the Bankruptcy Code. The Court has reviewed those amendments, together with the 1991 amendments, as they relate to Rules 7012(b) and 9027. As will be discussed *infra*, jurisdiction is not dependent upon those amendments

which require the parties to file statements declaring, *inter alia*, whether the proceeding is core or non-core. Thus, *Creasy* is not superseded.

Although this Court is bound by the Fourth Circuit's ruling on this issue, the Court recognizes that there are some jurisdictions which have applied the unanimity rule in bankruptcy cases. For instance, in *Ross v. Thousand Adventures of Iowa, Inc.*, 178 F.Supp.2d 996, 1002–03 (S.D.Iowa 2001), the court rejected the holding in *Sommers* and granted the plaintiffs' motion to remand because not all the defendants had joined in the removal notice. In so holding, the court said, inter alia, that "28 U.S.C. §§ 1441–1452[] must be read together. The unanimity rule is a strong rule governing notices of removal, and enforcement of the rule allows the plaintiff's choice

Next, Appellants argue that, even if *Creasy* applies, the case should be remanded because some Defendants failed to fulfill the requirements of the Bankruptcy Rules. Specifically, Appellants assert Defendants were required by Bankruptcy Rule 9027(e)(3) to file a statement affirmatively admitting or denying the allegations in the notice of removal and stating whether the proceeding is a core or non-core proceeding.[14] A similar requirement is set forth in Bankruptcy Rule 7012(b) which applies to the filing of responsive pleadings in adversary proceedings.[15] Rule 7012(b) further requires a party who asserts the proceeding is non-core to file a statement indicating whether the party consents to the bankruptcy court entering final orders or judgments. If express consent is not given in non-core proceedings, the rule prohibits a bankruptcy court from entering final orders and judgments. The 1991 Advisory Committee note to Rule 9027 explains, in part:

Rules 7008(a) and 7012(b) were amended in 1987 to require parties to allege in pleadings whether a proceeding is core or non-core and, if non-core, whether the parties consent to the entry of final orders or judgment by the bankruptcy judge. Subdivision (a)(1) is amended and subdivision (f)(3) [now (e)(3)] is added to require parties to a removed claim or cause of action to make the same allegations. The party filing the notice of removal must include the allegation in the notice and the other parties who have filed pleadings must respond to the allegation in a separate statement filed within 10 days after removal. However, if a party to the removed claim or cause of action has not filed a pleading prior to removal, there is no need to file a separate statement under subdivision (f)(3) because the allegation must be included in the responsive pleading filed pursuant to Rule 7012(b).

Fed.R.Bankr.P. 9027 advisory committee's note to the 1991 amendment.

In this case, the bankruptcy court recognized that not all the parties had complied with the bankruptcy rules, stating:

A review of the removal notice indicates that AMCI Resources, Inc., American and Westmoreland made an assertion as to the nature of the proceeding. Though untimely, Pocahontas filed a response to the removal notice on June 30, 2000. Richard K. Bailey and Piney have filed responsive pleadings with this Court. Yet, the pleadings do not include the assertion required by Rule 7012(b). Further, Bailey and Piney did not take the alternative measure of filing a responsive statement as required by 9027(e). The remaining defendants have taken no action.

---

of forum strong deference. Any doubt regarding removal is to be resolved in favor of remand." 178 F.Supp.2d at 1002. *Accord Hills v. Hernandez*, No. Civ.A.98–1108 at *2, 1998 WL 241518 (E.D.La. May 12, 1998) (remanding case removed pursuant to 28 U.S.C. §§ 1334 and 1452 because not all the defendants joined in or consented to the removal); *see also Retirement Sys. of Ala. v. Merrill Lynch & Co.*, 209 F.Supp.2d 1257 (M.D.Ala. 2002) (discussing split in decisions).

**14.** *See* note 8, *supra.*

**15.** Rule 7012(b) provides:

*(b) Applicability of Rule 12(b)–(h) F.R.Civ.P.* Rule 12(b)–(h) F.R.Civ.P. applies in adversary proceedings. A responsive pleading shall admit or deny an allegation that the proceeding is core or non-core. If the response is that the proceeding is non-core, it shall include a statement that the party does or does not consent to entry of final orders or judgment by the bankruptcy judge. In non-core proceedings final orders and judgments shall not be entered on the bankruptcy judge's order except with the express consent of the parties.
Fed.R.Bankr.P. 7012(b).

*Amended Order Denying Motion to Remand,* at 9.[16] Despite the fact that not all the parties have complied with the rules, this Court agrees with the bankruptcy court that this non-compliance is not fatal to the removal. *See id.* As indicated by the bankruptcy court, an assertion that the action is a core or non-core proceeding is not an allegation of federal jurisdiction; rather, it relates to the power of the bankruptcy court to resolve the issues brought before it after jurisdiction is established. *See id.* For instance, if the parties do not consent to the bankruptcy court entering final orders and judgments in non-core proceedings, the bankruptcy court will have to submit findings of fact and conclusions of law to the district court, and it will be this Court's responsibility to enter final orders and judgments. *See* 28 U.S.C. § 157(c)[17]; *see In re Heinsohn,* 247 B.R. 237, 242 (E.D.Tenn.2000) (holding that the "designation of the proceeding as core or non-core is not jurisdictional.... [In non-core cases,] it simply determines the ex-

tent of the bankruptcy court's authority to issue final decisions"). Accordingly, the Court finds that the failure of some Defendants to file an appropriate statement or responsive pleading is not a fatal jurisdictional defect.[18]

## B.

## Core Versus Non–Core Proceedings

 The next issue presented to the bankruptcy court was whether it had jurisdiction to hear the action and enter a final order and judgment. As mentioned in the previous section, bankruptcy judges may enter final orders or judgments only in actions involving core proceedings or upon consent of the parties in non-core proceedings. Otherwise, final orders and judgment will be entered by the district court. 28 U.S.C. 157(b)(1), (c)(1) & (2).[19] Thus, it falls upon the bankruptcy court to make an initial determination as to whether an action is a core or non-core proceeding. *See* 28 U.S.C. § 157(b)(3).[20]

**16.** Identical language is contained in the bankruptcy court's Order Denying Motion to Remand, at 9 (October 12, 2000).

**17.** Section 157(c) provides:

(c)(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

(2) Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title. 28 U.S.C. § 157(c).

**18.** Although Appellants complain that these procedural defects remain even today, these defects are not appropriate grounds for remand. As indicated by the bankruptcy court, they will, however, negatively impact the expeditious resolution of claims. *Amended Order Denying Motion to Remand,* at 9.

**19.** Sections 157(b)(1) provides:

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.
28 U.S.C. § 157(b)(1). For § 157(c)(1) & (2), see note 17.

**20.** Section 157(b)(3) provides:

The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a

■ In this case, the Removing Defendants successfully argued before the bankruptcy court that Appellants' action is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(K). Section 157(b)(2)(K) provides that a core proceeding includes "determinations of the validity, extent, or priority of liens." 28 U.S.C. § 157(b)(2)(K).[21] As noted by the bankruptcy court, it is a central function of bankruptcy law to determine the priority of competing claims to a debtor's property. *Amended Order Denying Motion to Remand,* at 11 (citing *Elscint, Inc. v. First Wisconsin Fin. Corp. (In re Xonics, Inc.),* 813 F.2d 127, 131–32 (7th Cir.1987)) (holding that one of the primary duties of the bankruptcy court is to decide conflicts amongst competing claims of creditors, but if the debtor abandons its claim to whatever assets the creditors are seeking, and the disposition of those assets cannot possibly affect any other creditors' rights, the bankruptcy court has no reason to maintain its jurisdiction to resolve the dispute); *Constellation Dev. Corp. v. Dowden (In re B.J. McAdams, Inc.),* 66 F.3d 931, 936 (8th Cir.1995) (citing *In re Xonics, Inc.* and holding "[a]n action to determine the validity, extent, or priority of liens asserted against the property of a bankrupt estate is a core proceeding under 28 U.S.C. §§ 157(b)(1) and 157(b)(2)(K)").

■ Appellants assert, however, the bankruptcy court erred in finding their action fell within the definition of a core proceeding as contained in § 157(b)(2)(K) because their action and the mechanic's lien was filed only against the non-bankrupt Defendants and in no way impacts the bankruptcy estate. Appellants specifically

point to the introductory paragraph of the lien, which provides, in part:

You are hereby notified that the undersigned, on behalf of the unpaid employees of Mate Creek Loading, Inc, Rhino Mining, Inc. and Island Fork Construction, LTD, (hereinafter referred to as the "Employees") claim a mechanic's lien for unpaid wages and benefits due them on all real estate and personal property of MATE CREEK LOADING, INC., RHINO MINING, INC., ISLAND FORK CONSTRUCTION, LTD, AMERICAN METALS & COAL INTERNATIONAL, INC., AMCI RESOURCES, INC., (collectively "AMCI"), POCAHONTAS LAND CORPORATION, PINEY LAND COMPANY, WESTMORELAND COAL COMPANY, TIMOTHY MCCOY, RICHARD K. BAILEY, LARRY MCKINNEY, ROBERT MASSEY AND AMON MAHON (hereinafter referred to as the "Corporations").

*Notice of Mechanic's Lien,* dated February 24, 2000. Appellants argue it is clear from this paragraph and the remainder of the lien document that they have not asserted any direct or indirect claim against Debtor. In fact, Appellants correctly point out that Debtor is never even mentioned in the lien. Nevertheless, in reviewing the lien, the Court agrees with the bankruptcy court that, in substance, Appellants are asserting a claim against Debtor's estate. *Amended Order Denying Motion to Remand,* at 11–12.

In the lien document, Appellants specifically make a claim against "the Corporations in and to the mining operations in Raleigh County known as the Josephine

---

proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.

28 U.S.C. § 157(b)(3).

**21.** Section 157(b)(2) contains a nonexclusive list of fifteen statutorily created categories of core proceedings.

and Tommy Creek mines, and East Gulf Preparation Plant located at Rhodell, in Raleigh County, West Virginia." *Notice of Mechanic's Lien,* at 7. In addition, Appellants assert the lien covers "all structures, including but not limited to, shafts, tunnels, buildings, tipples, belts, railroads or tramways, located on said property and related to said mine operation, on all equipment, vehicles, fixtures, supplies or other materials located at said mining operation, and all coal, either mined or in place." *Id.* Furthermore, Appellants state that the lien

extends to all interest of the Corporations set forth above, whether fee, minerals, leasehold, or contract, and whether legal or equitable, and in particular includes, but is not limited to, the following:

(1) All underground mine fixtures and improvements including belt, belt structure, water, power, and communication lines relating to all the Corporations' current operations generally known as the Josephine and Tommy Creek mines underground belt mines;

(2) Underground mining equipment consisting of the equipment set forth in the inventory list attached . . .

(3) The East Gulf Preparation Plant, together with all surface equipment associated with such plant and other outside facilities.

(4) All above ground coal conveying structures, loading facilities and electrical substations, power lines, and roadways and other improvements utilized in the operation of the Josephine and Tommy Creek mines;

(5) All existing raw coal and clean coal stockpiles, together with any receivables due upon such stockpiles; and

(6) The mining permits associated with operation of the foregoing mines, . . . together with all bond deposits and other intangible rights necessary for the operation of the mines and related facilities.

*Id.* at 7–8. Although Debtor is never mentioned in the lien document, it is clear that Appellants are asserting a lien against Debtors' real and personal property—as Debtor owns the coal preparation plant, mining equipment, conveyor systems, and leases of certain reserves collectively referred to as the East Gulf Operations, which includes the Josephine and Tommy Creek mines. Moreover, as noted by the bankruptcy court, even if Appellants are merely attempting to attach any interest the defendants named in the mechanic's lien have in the Debtor's estate, the validity, extent, and priority of the defendants' liens in the estate must be determined by the bankruptcy court in order for the mechanic's lien to be enforced. *Amended Order Denying Motion to Remand,* at 11.

 In addition to finding the mechanic's lien fell within the parameters of § 157(b)(2)(K), the bankruptcy court also found the lien is a core proceeding under 28 U.S.C. § 1334(b), as interpreted by *Bergstrom v. Dalkon Shield Claimants Trust (In re A.H. Robins Co.),* 86 F.3d 364 (4th Cir.1996), and *Wood v. Wood (In re Wood),* 825 F.2d 90 (5th Cir.1987), because it arose in a case under title 11. *Id.* Pursuant to 28 U.S.C. § 1334(b), this Court has "original but not exclusive jurisdiction of all civil proceedings . . . arising in . . . cases under title 11." 28 U.S.C. § 1334(b).[22] In *In re A.H. Robins Co.,* the

22. Section 1334(b) provides, in full:
Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

Fourth Circuit construed the phrase "arising in" as "those proceedings that 'are not based on any right expressly created by Title 11, but nevertheless, would have no existence outside of the bankruptcy.'" 86 F.3d at 372 (quoting *In re Wood*, 825 F.2d at 97). The *Wood* case further instructs courts that, "[i]n determining the nature of a proceeding for purposes of determining core status, the court must look to both the form and the substance of the proceeding." 825 F.2d at 98 (footnote omitted).

In applying these principles to the action before it, the bankruptcy court recognized that, in form, Appellants' mechanic's lien did not name Debtor and such a lien could normally exist outside of a bankruptcy case. *Amended Order Denying Motion to Remand*, at 12. However, as explained earlier, the lien substantively asserts a claim against the estate for unpaid wages and benefits. *Id.* In addition, the court noted that there was never any objection to the post-petition financing arrangement in which ACS would receive, *inter alia*, a first lien on Debtors' receivables, equipment, and inventory, in exchange for ACS giving Debtor a line of credit and a cash advance to pay Rhino and Mate Creek, so they, in turn, could pay their employees' wages. *Id.* at 12–13. By filing the lien, however, the court found Appellants were attempting to obtain priority status to those assets. Therefore, the court determined the proceeding "necessarily involves issues that are not only related to the Debtor's bankruptcy case, but which arose from within the case during the chapter 11 reorganization process." *Id.* at 13. Moreover, the court stated "[h]ad post petition financing not been provided, which contrib-

uted substantially to the continued operation of the mines through the Autumn and early Winter of 1999, the claims of . . . [Appellants'] for unpaid wages earned in the last two to three weeks of January 2000 would not likely exist." *Id.* (footnote omitted).

Upon review of the facts of this case and the lien, this Court agrees with the bankruptcy court's conclusion. It is clear that Appellants' claim exists by virtue of the post-petition financial arrangement which kept them employed from on or about September of 1999 through January of 2000. Without this arrangement, Appellants would have no claim for unpaid wages and benefits in January 2000. Thus, the Court finds Appellants' claim necessarily arose in a case under title 11, as described in § 1334(b), and is a core proceeding.

 Appellants also argue that this action does not fall within the scope of § 1334(b) because it only involves state-law claims. In support of their position, Appellants cite *New Horizon of N.Y. LLC v. Jacobs*, 231 F.3d 143 (4th Cir.2000), and *Interstate Petroleum Corp. v. Morgan*, 249 F.3d 215 (4th Cir.2001). However, the Court finds these cases are distinguishable from the present action. In *New Horizon*, the Fourth Circuit found jurisdiction did not exist because the state-law claims at issue were not "related to" the bankruptcy action under § 1334(b). As this Court has found Appellants' action in this case involves a "civil proceeding[ ] . . . arising in . . . [a] case[ ] under title 11," the "related to" standard under § 1334(b) is simply inapplicable.[23] Likewise, the Court finds

28 U.S.C. § 1334(b). In turn, this Court confers such jurisdiction on the bankruptcy court by a referral pursuant to 28 U.S.C. § 157(a).

**23.** Section 1334(b) provides for three categories of civil proceedings in which district

courts have original but not exclusive jurisdiction. Those proceedings are ones that arise under, arise in, or are related to cases under title 11. 28 U.S.C. § 1334 (providing, in part, "the district courts shall have original but not exclusive jurisdiction of all civil proceedings

that Appellants' reliance upon *Interstate Petroleum Corp.* is misplaced.

 As Appellants concede, *Interstate Petroleum Corp.* does not involve bankruptcy. Instead, the plaintiffs filed suit in federal court, alleging federal question subject matter jurisdiction existed under the Petroleum Marketing Practices Act. 249 F.3d at 218. The Fourth Circuit found, however, that the issue presented in the case was purely a contract dispute arising under state law and that neither party, nor the district court, invoked any federal statutes. Therefore, the Fourth Circuit found the district court did not have jurisdiction because there was no federal question to resolve. *Id.* at 221–22. To the contrary, although Appellants contend the present case involves only state-law issues, the Court finds, as previously mentioned, that this case arose in a case under title 11, Thus, the holding in *Interstate Petroleum Corp.* does not apply to this case. Moreover, merely because state-law issues arise in a case "does not by itself determine that it is non-core, rather than core.... It is the nature of the proceeding-its relation to the basic function of the bankruptcy court-not the

state or federal basis for the claim, that makes the difference here." *Arnold Print Works, Inc. v. Apkin (In re Arnold Print Works, Inc.)*, 815 F.2d 165, 169 (1st Cir. 1987). *See also* 28 U.S.C. § 157(b)(3) (stating, in part, "[a] determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law").

## C.

### Abstention and Equitable Remand

 Appellants next argue that the bankruptcy court erred by failing to abstain under the doctrines of mandatory and discretionary abstention and by failing to remand the action on equitable grounds. As both the bankruptcy court and this Court have determined that this case is a core proceeding because it arose in a case under title 11, this Court further agrees with the bankruptcy court that the mandatory abstention statute found in 28 U.S.C. § 1334(c)(2) is inapplicable here.[24]

 With respect to discretionary abstention, the Court finds that the bankruptcy court did not specifically address the issue in its *Amended Order*.[25] Never-

---

arising under title 11, or arising in or related to cases under title 11"). The legislative history of this provision indicates that these three categories were adopted, "not to distinguish between different matters, but to identify collectively a broad range of matters subject to the bankruptcy jurisdiction of federal courts." *In re Wood*, 825 F.2d at 92 (footnote and citation omitted). Nevertheless, making a distinction among these categories is important because the category a particular proceeding falls under is relevant to the abstention provisions contained in § 1334(c), core proceeding determinations under § 157(b)(2), and venue issues. 1 Collier on Bankruptcy ¶ 3.01[4][c] (Lawrence P. King et al. eds., 15th ed. 2001).

**24.** Section 1334(c)(2) provides:

Upon timely motion of a party in a proceeding based upon a State law claim or

State law cause of action, *related to a case under title 11 but not arising under title 11 or arising in a case under title 11*, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. 28 U.S.C. § 1334(c)(2) (emphasis added).

**25.** In their brief, Appellees assert the bankruptcy court's decision regarding discretionary abstention should be reviewed under the abuse of discretion standard. Although the Court agrees such a standard applies when a bankruptcy court rules on a discretionary abstention issue, there was no mention of discretionary abstention in the bankruptcy court's Amended Order. Thus, there is no

theless, this Court finds discretionary abstention is not warranted under the facts of this case. For discretionary abstention to apply, courts have considered a number of factors, including:

> (1) the court's duty to resolve matters properly before it; (2) the predominance of state law issues and non-debtor parties; (3) the economical use of judicial resources; (4) the effect of remand on the administration of the bankruptcy estate; (5) the relatedness or remoteness of the action to the bankruptcy case; (6) whether the case involves questions of state law better addressed by the state court; (7) comity considerations; (8) any prejudice to the involuntarily removed parties; (9) forum non conveniens; (10) the possibility of inconsistent results; (11) any expertise of the court where the action originated; and (12) the existence of a right to a jury trial.

*Blanton v. IMN Fin. Corp.*, 260 B.R. 257, 265 (M.D.N.C.2001) (footnote and citations omitted). In applying these factors to the present case, the Court finds they weigh against abstention. As previously mentioned, Appellants' lien is inextricably intertwined with the bankruptcy case. Thus, it is important that the bankruptcy court be able to resolve the lien issue because of the effect it may have on the bankruptcy estate. In addition, the Court finds the state-law issues raised by Appellants in their action are well within the bankruptcy court's and this Court's ability to address, particularly to the extent it involves determining the legitimacy and the priority of the lien. Moreover, allowing the bankruptcy court to resolve the issue makes better use of judicial resources and it will prevent potential conflicts between a state court decision and the administration of the estate in the bankruptcy court. The Court further finds that forum non conveniens is not at issue because the state case and the bankruptcy case were filed in the same geographic area.

In their brief, Appellants' argue discretionary abstention should be applied because the link between the state and bankruptcy case is too tenuous. For the reasons stated above, the Court rejects this argument. Appellants' further argue that there are essentially no assets left in the bankruptcy case because the Trustee already has disbursed, or agreed to disburse, 95% of the proceeds of the sale of Debtor's assets to "AMCI." [26] *Appellants' Brief*, at 4 & 20. Thus, Appellants assert there would be little to no effect on the bankruptcy estate if their action is tried in state court. The Court finds, however, that this factor only emphasizes the importance of the bankruptcy court resolving the lien issue because the priority given to that lien will have a direct impact on the ability of the Trustee to sell Debtor's assets.[27]

 Finally, Appellants makes a cursory comment that having the case in bankruptcy court deprives them of their Seventh Amendment right to a jury trial. In support of that position Appellants cite *Bright v. Southern Technical College, Inc. (In re Southern Technical College, Inc.),*

---

decision for this Court to review. *See In re Demert & Dougherty, Inc.*, 2001 WL 1539063, at *7 (N.D.Ill. Nov. 30, 2001) ("The bankruptcy court's decision to decline permissive abstention under 28 U.S.C. § 1334(c)(1) would be reviewed under an abuse of discretion standard" (citation omitted)).

**26.** In its brief, Appellants refer to American Metals & Coal International, Inc. and AMCI Resources, Inc. collectively as AMCI.

**27.** If there are no assets left is be disbursed, Appellants may ask the bankruptcy court to reconsider abstention and remand to the state court.

144 B.R. 421 (Bankr.E.D.Ark.1992), and *Zweygardt v. Colorado National Bank of Denver,* 52 B.R. 229 (Bankr.D.Colo.1985). However, the Court finds these cases do not apply. Both of these cases involved non-core proceedings which were decided prior subsection (e) being added to 28 U.S.C. § 157 as part of the Bankruptcy Reform Act of 1994. Prior to the adoption of § 157(e), the bankruptcy court had no authority to conduct jury trials. *Official Committee of Unsecured Creditors ex rel. Estate of Stansbury Poplar Place, Inc. v. Schwartzman (In re Stansbury Poplar Place, Inc.),* 13 F.3d 122, 128 (4th Cir. 1993). Subsection (e) granted such authority to bankruptcy courts by providing:

If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties.

28 U.S.C. § 157(e). The Court recognizes that this section does not "create any right of jury trial; it simply authorizes a bankruptcy judge to conduct a jury trial '[i]f the right to jury trial applies,' and the other conditions of the statute are met.... [S]uch a right exists if the action being tried is one in which, under the Seventh Amendment to the Constitution of the United States, a right to jury trial would exist in a nonbankruptcy forum." *In re Tamojira, Inc.,* No. 94–34438–DOT, 1998 WL 103142, at *2 & n. 3 (Bankr.E.D.Va.

1998) (internal quotation omitted) (citing *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989)).[28] In other words, if Appellants otherwise have a right to a jury trial, such a trial may be held before the bankruptcy court if this Court designates it to conduct the trial and the parties give express consent. If the parties do not consent to the bankruptcy court conducting the trial, the trial will be held before this Court. *See Suntrust Bank v. Ferrell (In re Pluma, Inc.),* No. 99–11104C–11G, 2000 WL 33673752, at *3 (Bankr.M.D.N.C. Sept.15, 2000) (stating, where the parties do not consent to the bankruptcy court conducting the jury trial, "discovery and pre-trial motions are handled in the bankruptcy court and the case then is recalled to the district court for the jury trial"); *United States ex rel. Rahman v. Oncology Assoc., P.C., (In re EquiMed),* Nos. Civ. H–95–2241, Civ. H.–00–1216, Civ. H–00–1569, 2000 WL 1074304, at *4 (D.Md. July 24, 2000) (holding a "[w]ithdrawal of the reference is therefore required in instances where a defendant who is entitled to a jury trial does not consent to the holding of such trial in the Bankruptcy Court").[29] Thus, for these reasons, the Court finds that any Seventh Amendment right Appellants have to a jury trial is not violated by their action being removed to federal court.

 Having found no compelling reason why discretionary abstention should be applied, the Court rejects Appellants' argument in this regard.[30] Similar-

---

**28.** "Once in the bankruptcy system, the entitlement of the parties in a removed action to a jury trial would be determined in the same fashion as if the action had been commenced in the bankruptcy court." 1 Collier on Bankruptcy ¶ 3.08[4].

**29.** For the procedures governing withdrawals of reference, see 28 U.S.C. § 157(d), Rule 5011 of the Federal Rules of Bankruptcy, and

Rule 1.01 of the Local Civil Rules Relating to Bankruptcy Referrals and Appeals (General Order of Relief).

**30.** Although not briefed by the parties, the Court recognizes that there is some disagreement about whether it is even possible to abstain in a removal situation because there is no action pending in state court without a

ly, even if the Court looks at these factors through the broader lens of equitable remand, the Court finds no reasons sufficient to justify application of that doctrine in this case. *See* 28 U.S.C. § 1452(b).[31] Thus, the Court concludes that neither discretionary abstention nor equitable remand should be applied under these circumstances.

## IV.

## CONCLUSION

Accordingly, for the foregoing reasons, the Court **FINDS:** (1) the failure of some Defendants to file an appropriate statement or responsive pleading is not a fatal jurisdictional defect; (2) Appellants' claim is a core proceeding because it arose in a case under title 11, as described in § 1334(b); and (3) application of abstention and equitable remand principles are not warranted. Therefore, the Court **AFFIRMS** the decision of the bankruptcy court and **REMANDS** this action to the bankruptcy court for further proceedings consistent with this Memorandum Opinion and Order.

The Court **DIRECTS** the Clerk to send a certified copy of this Order to Judge Pearson, counsel of record and any unrepresented parties and to publish it on the Court's website.

---

remand of the action. *Compare Greiner v. Columbia Gas Trans. Corp.,* 41 F.Supp.2d 625, 627 n. 4 (S.D.W.Va.1999) (stating "abstention is inappropriate where ... the only state civil proceeding was removed to federal court. Consequently, there is no parallel state proceeding. If [the] Court were to abstain, nothing would happen because there is only one lawsuit. What movant really seeks is remand ... back to State Court" (internal quotation and citation omitted)), *with Anderson v. Hoechst Celanese Corp. (In re United States Brass Corp.),* 173 B.R. 1000, 1004 (recognizing a disagreement as to whether mandatory abstention principles can apply in removal cases, but agreeing with "the majority opinion that abstention does apply to cases removed under § 1452"). In this case, the Court need not resolve this legal issue because the Court has found that, in any event, abstention is not warranted under the present facts.

**31.** Section 1452(b), provides, in part: "The court to which such claim or cause of action

is removed may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b). Although virtually identical factors are used in determining whether discretionary abstention and equitable remand should be applied, the Court recognizes that the concept of equitable remand is broader than abstention. *See Ernst & Young, LLP v. Devan (In re Merry–Go–Round Enterprises, Inc.),* 222 B.R. 254, 256–57 (D.Md.1998) (stating, "virtually the same (if not the identical) factors have emerged for judging the propriety of permissive abstention under § 1334(c)(1) as have been articulated for deciding the propriety of a remand under § 1452(b).... It does not follow, however, that every remand decision must be justifiable under abstention law. Section 1452 itself provides the criterion for orders of remand, and it broadly states that a claim may be remanded 'on any equitable ground,' i.e., as interpreted by some courts, any 'appropriate ground' " (citations omitted)).